**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Larry Jones, | ) No. CV05-3549-PHX-EHC |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Michael J. Astrue, Commissioner of Social Security, | ) |
| Defendant. | ) |

This is an appeal from the decision of the Commissioner of the Social Security Administration[1] to deny disability benefits to Plaintiff Larry Jones.

**I. INTRODUCTION**

Plaintiff commenced this action on November 2, 2005, pursuant to 42 U.S.C. § 405(g). The Commissioner of the Social Security Administration adopted the Administrative Law Judge's ("ALJ") Partially Favorable Decision, finding that Plaintiff was disabled from February 1, 2003, through October 31, 2004, but not thereafter. (Tr. 25). Plaintiff seeks judicial review of Defendant's decision denying his claim for disability benefits after October 31, 2004. (Dkt. 1).

---

[1] Michael J. Astrue is now the proper defendant and replaces his predecessor, Jo Anne B. Barnhart, pursuant to Fed. R. Civ. P. 25(d)(1).

1    Pending before the Court are the parties' Cross-Motions for Summary Judgment.
2 (Dkts. 10, 12). Plaintiff requests that the Court partially reverse the Commissioner's
3 decision and remand for payment of benefits after October 31, 2004; the Commissioner
4 requests that the Court affirm the ALJ's decision.

5 **II. BACKGROUND**

6    Plaintiff filed an application for Disability Insurance Benefits on June 14, 2002,
7 under Title II and Part A of Title XVIII of the Social Security Act. (Tr. 164). Plaintiff
8 alleges in his application that he became disabled on November 14, 2001. *Id*. After being
9 denied twice by the Regional Commissioner, a hearing was held before the ALJ.

10    On March 26, 2004, the ALJ found that Plaintiff was disabled from November 14,
11 2001, until February 1, 2003, but not thereafter. (Tr. 141-46). This award of disability is
12 not an issue in this case.

13    After Plaintiff's timely request for review of the denial of benefits after February
14 1, 2003, the Appeals Council remanded the case to the ALJ on September 22, 2004, for a
15 second hearing. (Tr. 153-54). The Appeals Council vacated the decision only with
16 respect to the issue of disability from February 1, 2003, leaving the award for disability
17 benefits from November 14, 2001, to February 1, 2003, intact. *Id.*  This ruling was based
18 on new evidence submitted by Plaintiff after the hearing but before the ruling was issued,
19 which the ALJ failed to address in his decision despite having previously received the
20 evidence. *Id.*

21    On February 22, 2005, on remand, the ALJ extended the Plaintiff's disabled status
22 from February 1, 2003, through October 31, 2004, a continuation of 21 months from the
23 first award of disability benefits. (Tr. 21-26). Plaintiff timely requested review of the
24 denial of benefits beginning November 1, 2004. The Appeals Council denied the request
25 on October 7, 2005, (Tr. 8), thereby adopting the ALJ's decision as the final decision in
26 Plaintiff's case. (Tr. 11-13).

27
28

- 2 -

## III. STANDARD OF REVIEW

"The Social Security Administration's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 2007 WL 2034287 at *3 (9th Cir. 2007) (citing *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1052 (9th Cir.2006); 42 U.S.C. §§ 405(g), 1383(c)(3)). "Substantial evidence is more than a mere scintilla but less that a preponderance." *Bayliss v. Barnhart,* 427 F.3d 1211, 1214 n. 1 (9th Cir.2005) (internal quotation marks and citation omitted). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn* at *3 (internal quotation marks and citations omitted).

## IV. FACTS

### A. Education and Employment Background

Plaintiff was born on March 10, 1957. (Tr. 246). He has a high school education and his relevant employment history includes work as a service manager, service writer, auto mechanic, and appliance repairman. (Tr. 22). Plaintiff testified that he had worked as an auto technician from 1974 to 1999 and his attempt to return to work as a part-time service writer was unsuccessful. (Tr. 56).

### B. Medical Treatment / Medical Records

Plaintiff underwent two back surgeries, the first for a work-related injury in 1994, which was a "decompressive surgery for sciatica." (Tr. 301). His second surgery was a lumbar fusion on February 1, 2002. (Tr. 244-45). The following is a summary of his more recent medical history from various medical reports contained in the record:

**02/12/2004** - In a Motor Vehicle Division (MVD) application, Dr. Burhan Chinikhanwala, from Crescent Medical Associates, Inc., certifies that Plaintiff is qualified for a Permanent Disability Plate/Placard. (Tr. 382).

**03/09/2004** - Dr. Chinikhanwala writes a letter stating that Plaintiff has "significant neck, back and joint problems and would not be able to sustain a gainful employment." (Tr. 385).

**03/26/2004** - Social Security Commissioner finds Plaintiff is disabled from November 14, 2001, until February 1, 2003. (Tr. 21).

**06/11/2004** - Letter from John Albers, president of Havasu Auto Care, describing problems during the one month Plaintiff was employed as a service advisor.  Mr. Albers states Plaintiff "is a good employee when he is able to work." (Tr. 241).  He reports that Plaintiff has been unable to work a complete week due to his back pain, and describes an incident when Plaintiff "was helping a client at the front counter, when his back pinched and he went to the ground . . ." *Id.*

**10/31/2004** - Dr. Sherif Nasef, a board-certified rheumatologist, to whom Dr. Wrona, of Midwest Internal Medicine, referred Plaintiff, conducts first consultation. (Tr. 395-96). His review of Plaintiff's history: "[An] industrial accident in 1995 result[ed] in lumbar disc herniation and underwent diskectomy with good results initially, but symptoms recurred and he had to have fusion surgery.  However, the surgery did not alleviate his pain . . ."  Plaintiff has tried various anti-inflammatories, muscle relaxants, pain medication, and steroids. (Tr. 395).  Two epidural injections in the cervical spine partially improved his symptoms.  "[H]is major problem at this point is neuropathic pain in both feet that prevents him from walking for a long time." *Id.*

  Dr. Nasef's musculoskeletal impression: "Scar of previous two lumbar spine surgeries with decreased range of motion of the lumbar spine in all directions and spastic paraspinal muscles secondary to fusion.  There is also decreased range of motion of the cervical spine with tender paraspinal muscles." (Tr. 396).  His diagnoses: Failed-back syndrome and chronic L5-S1 radiculopathies.  The doctor prescribes two additional medications and lists two more for future treatment. *Id.*

**11/24/2004** - Dr. Nasef examines Plaintiff and finds mild diffuse DDD of L-spine with postoperative changes, and HNP of C3/4 and broad based C5/6 disc extrusion of C-spine. Dr. Nasef elimates one medication and adds two more. (Tr. 394). He writes prescriptions for a wheelchair and acupuncture treatment. (Tr. 386).

**12/01/2004** - Dr Nasef's musculoskeletal impression is tender ROM of L-spine. (Tr. 393). Dr. Nasef completes a RFC questionnaire. The diagnosis is Failed Back Syndrome and the prognosis is poor. He lists the following symptoms: pain in the lower back (which emanates to the legs), knees, feet, neck, right shoulder (burning pain), and hip; weakness in the legs; and inability to sleep due to pain. The doctor also describes reduced range of motion; pain severe enough to frequently interfere with attention and concentration; severe exertional and postural limitations; and emotional factors that contribute to Plaintiff's symptoms. (Tr. 387-391). Dr. Nasef notes that Plaintiff's impairments are "*reasonably consistent* with the symptoms and functional limitations described in [the] evaluation." (emphasis in original), (Tr. 388), and that Plaintiff is not a malingerer. (Tr. 387).

**12/06/2004** - Dr. Nasef examines Plaintiff - no changes. (Tr. 392).

**12/29/2004** - Dr. Nasef adds one medication to treat side effects from his drug regimen. (Tr. 408).

**01/11/2005** - Dr. Nasef's musculoskeletal impression: "Tender ROM of L-spine with spastic paraspinal muscles. Tender ROM of C-spine with tender paraspinal muscles and loss of normal lordosis." (Tr. 409). Dr. Nasef adds another diagnosis to his "Problem List": DDD of C-spine S/P ESI failure. For cervical radiculopathy: "MRI of C-spine ordered before neurosurgical consultation." *Id.* One medication is added to Plaintiff's current regimen. *Id.*

**02/22/2005** - Social Security Commissioner finds Plaintiff is disabled from February 1, 2003, through October 31, 2004.

**03/15/2005** - Dr. Nasef examines Plaintiff - no changes. (Tr. 410).

**05/02/2005** - Diagnostic Imaging Report prepared by Dr. Frank McCully of Havasu Regional Medical Center, from examination on April 1, 2005. (Tr. 413-14). His overall "impression" or conclusion: "Degenerative spondylitic changes from C3-4 through C6-7 as above eccentric to the left at C5-6, with associated mild left neural foraminal narrowing." (Tr. 414). Dr. Nasef finds from MRI of C-spine: "Multilevel DDD and left C5/6 neural foraminal stenosis." (Tr. 412). He refers Plaintiff for neurosurgical consultation. *Id.*

## C. Testimony of Vocational Expert

Mark Kelman, a Vocational Expert ("VE"), testified at Plaintiff's final ALJ hearing. (Tr. 59-62). The ALJ presented the VE with a hypothetical of someone who could do sedentary work, and who requires "the opportunity for frequent changes of position, stand up for purposes of relief of pain and then sit down again . . ." (Tr. 61). The VE testified that such an individual would not be able to return to his "past relevant work," but could do unskilled work. *Id.* Examples cited by the VE were "telemarketing representative," "assembly production worker," and "cashier positions." (Tr. 61-62).

When faced with another hypothetical, if the ALJ were to find Plaintiff credible, the VE replied that there would be no jobs available for such a person. (Tr. 62).

## V. ANALYSIS

When evaluating a claim for a Period of Disability and Disability Insurance Benefits, the claimant has the burden of establishing disability. A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

1  The ALJ engages in a five-step evaluation pursuant to 20 C.F.R. §§ 404.1520 and
2  416.920 to determine whether the claimant is disabled.  In the first four steps of the
3  analysis the claimant has the burden of demonstrating (1) that the claimant has not
4  engaged in substantial gainful activity since filing for benefits; (2) that the claimant's
5  alleged impairment is sufficiently severe to limit one's ability to work; (3) whether the
6  alleged impairment is included in the Listings of Impairment and meets the duration
7  requirement; (4) that, after considering all impairments in combination and determining
8  the claimant's Residual Functional Capacity ("RFC"), the claimant can no longer perform
9  past relevant work.  Finally, the burden shifts to the Social Security Administration to
10 demonstrate (5) that the claimant is not disabled and that claimant can engage in some
11 type of substantial gainful activity that exists in significant numbers in the national
12 economy. *See* 20 C.F.R. § 404.1560(c)(2).

13 The Social Security Commissioner had already found, on March 26 2004, that all
14 five steps were fulfilled and Plaintiff was indeed disabled from November 14, 2001, until
15 February 1, 2003.  The second ALJ, on February 22, 2005, extended the period of
16 disability until October 31, 2004, and the issue remains whether Plaintiff is disabled for
17 the purpose of receiving disability benefits after that date.  Each of the five steps will be
18 addressed in turn.

19 *First*, it is uncontroverted that the plaintiff has not engaged in substantial gainful
20 activity since filing for benefits.

21 *Second*, the ALJ in the first decision found that Plaintiff's "medically determinable
22 'severe' impairment" was a back disorder. (Tr. 142).  However, the ALJ in the second
23 decision found that Plaintiff's condition had worsened in that Plaintiff's "medically
24 determinable 'severe' impairments were "chronic back pain, degenerative arthritis,
25 polyneuropathy, bilateral knee pain, and failed back syndrome." (Tr. 23).

27 *Third*, the ALJs in both decisions found that Plaintiff's severe impairments, either
28 alone or in combination, were not included in the Listings of Impairment. (Tr. 142, 23).

- 7 -

*Fourth*, in the first decision, after finding a closed period of disability from November 14, 2001, until February 1, 2003, the ALJ found that Plaintiff was capable of performing past relevant work (as service manager/writer) after February 1, 2003. (Tr. 144). The second ALJ ruled otherwise, instead finding that Plaintiff was indeed disabled from February 1, 2003, through October 31, 2004, an additional 21 months. (Tr. 25). Moreover, the ALJ in the second decision found that Plaintiff could no longer perform his past relevant work even beyond the closed period ending on October 31, 2004. (Tr.26).

*Fifth*, at this juncture, the burden shifts to the Social Security Administration ("SSA") to demonstrate that Plaintiff is not disabled and that, although no longer able to perform past relevant work, can engage in some type of substantial gainful activity that exists in significant numbers in the national economy. More specifically, the ALJ who wrote the second decision carries the burden of establishing that Plaintiff, although no longer able to perform his past relevant work, is nonetheless capable of engaging in substantial gainful activity, in this case sedentary work, as of November 1, 2004. (Tr. 21-26).

The ALJ ruled that "[s]ince November 1, 2004, Plaintiff "has [had] the residual functional capacity to perform a wide range of sedentary work," but requires a sit/stand option on the job. (Tr. 25). Plaintiff alleges that this determination of medical improvement is not supported by substantial evidence in the file. (Dkt. 10)

Plaintiff further alleges that the ALJ failed to accord adequate weight to the opinions and assessments of his treating physician, Sherif Nasef, M.D. *Id.*

### A. Physician Opinion Evidence

In general, a treating physician's opinion is afforded more weight than that of an examining non-treating physician, whose opinion, in turn, is afforded more weight than that of a non-examining physician. *See Orn v. Astrue*, 2007 WL 2034287 at *4 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)). Additionally, "[i]f a treating physician's

- 8 -

opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)).

Moreover, Social Security Ruling 96-2p, in explaining § 404.1527, provides that a "finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected*. Treating source medical opinions are still entitled to deference . . ." *Id.* at *5 (quoting S.S.R. 96-2p at 4 (Cum. Ed.1996), *available at* 61 Fed.Reg. 34,490, 34,491 (July 2, 1996)) (emphasis added).

"Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than offer his conclusions." *Id.* (inner quotations and citations omitted).

In this case, the ALJ rejected the opinion of Plaintiff's treating physician, Dr. Nasef, for two reasons: 1) because Dr. Nasef's conclusions were "totally inconsistent with the doctor's own treatment notes," and 2) because Dr. Nasef "had only seen the claimant on two prior office visits." (Tr. 23).

**1. Medical opinion not inconsistent with other substantial evidence in record**

Here, Plaintiff has had many treating physicians, the most recent being Dr. Sherif Nasef. Dr. Nasef completed a Residual Functional Capacity Assessment (RFC) on December 12, 2004 (Tr. 387-391). Dr. Nasef described Plaintiff's condition, including diagnoses, limitations/restrictions, and prognoses, indicating that Plaintiff is unable to maintain any type of substantial gainful activity. His opinion must be given controlling

- 9 -

weight, unless it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record. *See Orn* at *4.

There is nothing in the record to indicate that Dr. Nasef's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, nor does the ALJ assert differently. However, the ALJ did find that Dr. Nasef's opinion was inconsistent with the other substantial evidence in the case record; he declared that Dr. Nasef's conclusion was "totally inconsistent with the doctor's own treatment notes." (Tr. 23) (citation omitted).

The ALJ's conclusion, however, is not supported by "specific and legitimate reasons supported by substantial evidence in the record." *Orn* at *5. He does not thoroughly summarize the facts or detail the conflicting clinical evidence to support his rejection of Dr. Nasef's opinion. His justification is confined to the following three factors, which come from Dr. Nasef's initial evaluation on October 31, 2004: Plaintiff had improved with epidural injections; that his "major problem" was neuropathic pain in both feet, and that "[a]s of October 31, 2004, the claimant was not taking any medication apart from Vicodin on an as needed basis.[2]" (Tr. 22-23) (citation omitted).

In fact, a review of "the case record" does not reveal an inconsistency because it is a review of the entire case record. *See id.* at *3 ( "a reviewing court must consider *the entire record as a whole* and may not affirm simply by isolating a specific quantum of supporting evidence." (internal quotation marks and citations omitted) (emphasis added)). The ALJ erroneously isolated Dr. Nasef's treatment notes in his review and Defendant acknowledges the same. *See* Dkt. 13, p. 4 ("[T]he ALJ rejected Dr. Nasef's opinion because his *limited* treatment notes were inconsistent with his RFC assessment." (citation

---

[2] Not only are these factors limited, they are misleading; this is addressed in Part V.B, *infra*.

- 10 -

1  omitted) (emphasis added)).  A doctor would be remiss to assess a patient without
2  reviewing the medical records from previous treating physicians.

3  Moreover, to refute a treating physician's opinion and relegate it to less than
4  "controlling weight," there must be "substantial evidence" in the record that reflects
5  another doctor's conflicting opinion. *Id.* at *6 (citing 20 C.F.R. § 404.1527(d)(2)).  When
6  an examining, non-treating physician relies on the same clinical findings and differs only
7  in his conclusions, the examining, non-treating doctor's conclusions are *not* "substantial
8  evidence." *Id.* at *5.  For it to be "substantial evidence," the examining physician must
9  provide independent clinical findings as follows: "either (1) diagnoses that differ from
10 those offered by another physician and that are supported by substantial evidence; or (2)
11 findings based on objective medical tests that the treating physician has not herself
12 considered." *Id.* (citations omitted).

13 In rejecting Dr. Nasef's opinion, the ALJ instead relied on a *non-examining*, *non-*
14 *treating* physician, Dr. Hershel Goren. (Tr. 22-24).  Dr. Goren testified that Plaintiff was
15 capable of performing "light work," which is more strenuous than sedentary activity, as
16 of February 1, 2003, twelve months after Plaintiff's lumbar fusion. (Tr. 38-39, 98-101).
17 This clearly contradicts Dr. Nasef's opinion.

18
19 What is also clear is that none of Dr. Goren's conclusions were based on
20 independent clinical findings.  His testimony was based entirely on the medical record,
21 having never examined the plaintiff. (Tr. 35).

22 Dr Goren disagreed with the plaintiff's treating neurologist, saying that Dr.
23 Bennett's recommended restrictions were not supported by his evaluation. (Tr. 36).  He
24 also had "a little bit of a difficulty" with the treating orthopedic surgeon's
25 recommendation that Plaintiff could go back to work at a sedentary level. *Id.*

26 Dr. Goren also contradicted treating physician Dr. Aguila, who had observed that
27 Plaintiff could not walk in tandem fashion.  Dr. Goren insisted this too was not supported
28

- 11 -

by the record, and although *he acknowledged that it wasn't in the "present record*," he offered the possibility that the inability to walk in tandem fashion was due to alcoholism. (Tr. 37).

Dr. Goren questioned Dr. Chinikhanwala's statement that Plaintiff was unemployable; Dr. Nasef's reported restrictions and wheelchair prescription; Plaintiff's description of right shoulder and knee pain with no related restrictions by his treating doctors; and the lack of signs or symptoms of carpal tunnel syndrome in the record, even though he acknowledged that two electromyograms showed evidence of the syndrome. *Id.*

Dr. Goren then proceeded to make his own conclusions regarding Plaintiff's exertional and postural restrictions, which were significantly less restrictive than the limitations proposed by Plaintiff's treating physicians. (Tr. 38-39). In sum, Dr. Goren, having never examined Plaintiff, simply relied on the medical record and disagreed with the various treating physicians' conclusions. He did not base any of his conclusions on independent clinical findings. Consequently, Dr. Goren's contradicting opinions are *not* "substantial evidence," and therefore do not carry weight against the opinion of Dr. Nasef.

**2. Frequency of prior office visits not controlling**

Even if an inconsistency had existed and substantial evidence supported Dr. Goren's diverging opinions, Dr. Nasef's opinion would still have been entitled to deference. *See Orn* at *6 (citing S.S.R. 96-2p at 4, 61 Fed.Reg. At 34,491). In this circumstance, "the ALJ is instructed by [20 C.F.R. ] § 404.1527(d)(2) to consider the factors listed in § 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician." *Id.* Two of the many factors listed are the length of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i). The ALJ's second reason for rejecting Dr. Nasef's opinion was his observation that he and Plaintiff had only met twice. (Tr. 23).

- 12 -

Dr. Nasef's opinion has already been established as having "controlling weight," and therefore, the factor of frequency is not applicable. However, because the ALJ cited it in his decision, the issue will be addressed.

The record shows that Plaintiff had seen Dr. Nasef three times, not two, before his hearing with the ALJ: October 31, 2004 (Tr. 395-96); November 24, 2004 (Tr. 394); and December 6, 2004 (Tr. 392). Furthermore, the record reflects that Plaintiff was examined by Dr. Nasef four more times thereafter, the last being on May 2, 2005, at which time Dr. Nasef referred Plaintiff for a neurosurgical consultation.(Tr. 412-14).

Plaintiff has been referred to a variety of doctors. Just because Dr. Nasef was the most recent in a string of treating physicians does not mean his opinions should be excluded. In addition, frequency is only one of many factors to be evaluated in determining the weight to give a treating doctor's opinion that does not qualify as "controlling." *See* 20 C.F.R. § 404.1527(d)(2)-(6). Frequency of examination alone is not determinative.

## B. Determination of medical improvement related to ability to work

Plaintiff alleges that the ALJ's determination that Plaintiff had experienced "medical improvement related to his ability to work" such that he has the residual functional capacity to perform a wide range of sedentary work as of November 1, 2004, is not supported by substantial evidence in the record. (Dkt. 10, p. 12).

At the fifth step of the analysis, where it has already been determined by the ALJ that Plaintiff can no longer perform past relevant work, (Tr. 26), the burden shifts to the Social Security Administration to demonstrate that the claimant is not disabled and that he can engage in some type of substantial gainful activity that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c)(2).

The SSA Commissioner had already found that Plaintiff was disabled from November 14, 2001, through October 31, 2004, a period of almost three years. Given the

ALJ's burden, he must establish that Plaintiff has *improved* to a point such that he can perform a wide range of sedentary work.

Besides rejecting Dr. Nasef's opinion, the ALJ indicated he based his decision on treatment notes by Dr. Nasef stating that Plaintiff had improved with epidural injections, that his major problem was neuropathic pain in both feet, and that "[a]s of October 31, 2004, the claimant was not taking any medication apart from Vicodin on an as needed basis." (Tr. 22-23) (citation omitted).

While it is true that Dr. Nasef indicated Plaintiff was taking Vicodin on an as needed basis, which was at the time of the initial evaluation, (Tr. 395), the ALJ failed to indicate that the doctor had added two more medications to Plaintiff's regimen: a "Duragesic patch 50 mcg per hour every three days and Zanaflex 2 mg tid." (Tr. 396). In fact, at the hearing on December 14, 2004, the ALJ stated for the record that Plaintiff was on three medications: 30 milligrams of Avinza; 2 milligrams of Zanaflex and 25 milligrams of Phenergan (Tr. 34).

The ALJ stated: "The claimant's orthopedic problems have improved with conservative treatment, i.e., epidural injections." However, the treatment notes indicate that Plaintiff saw "Dr. Powar and received two epidural injections in the cervical spine and his symptoms improved partially." (Tr. 395). It is fair to say, then, that the ALJ's description of this treatment was misleading; Plaintiff had received a limited treatment of two injections which resulted in partial improvement.

As for the "major problem" of neuropathic pain in Plaintiff's feet, Dr. Chinikhanwala had ordered an MRI "to rule out synovitis of the joints of the feet," *Id.,* conveying the possibility that the foot problem deserved more weight than the ALJ had given to the problem.

When questioned regarding any improvement in Plaintiff's condition, Dr. Goren admitted that, given Plaintiff's symptoms, his condition had not improved. (Tr. 39). The

1 ALJ then observed that Plaintiff came to the hearing without a wheelchair, walker, or
2 cane. Based on that observation, Dr. Goren, *testifying telephonically*, surmised that
3 Plaintiff did not require a "mandatory aide" and therefore there was "no clear cut
4 evidence of worsening." (Tr. 40). But it is not Plaintiff's burden to prove that his
5 condition has worsened; rather, it is the ALJ's burden to prove that his condition has
6 improved.

7 Finally, when cross-examined by Plaintiff's attorney, Dr. Goren admitted that
8 some patients undergo lumbar fusions but still suffer intractable back pain, even though
9 all diagnostic tests show a successful fusion. (Tr. 41).

10 Overall, the evidence offered by the ALJ to support his ruling, that Plaintiff had
11 improved to a point that he was no longer disabled, is minimal at best. Reviewing the
12 record as a whole, the ALJ did not meet this burden.

### C. Conclusion

15 The ALJ's reasons for rejecting the opinion of Dr. Nasef, Plaintiff's most recent
16 treating physician, are not sustaining, and his conclusion that Plaintiff experienced
17 sufficient medical improvement such that he could perform a wide range of sedentary
18 work is not supported by substantial evidence in the record. With no legal justification to
19 do otherwise, Dr. Nasef's opinion must be given controlling weight. Therefore, it is the
20 Court's finding that Plaintiff is disabled.

21 The ALJ's decision is reversed and the Court remands for calculation of benefits.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. 10) is **GRANTED**.

**IT IS FURTHER ORDERED** reversing the denial of benefits and remanding the matter for payment of benefits to Plaintiff.

1  **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment
2  (Dkt. 12) is **DENIED**.
3  DATED this 28th day of September, 2007.

*Earl H. Carroll*
Earl H. Carroll
United States District Judge